WILSON v. HINES, Director General of Railroads.

No. 3563.   Decided April 1, 1921.   (196 Pac. 1007.)

1. CARRIERS—WHERE CARRIER DISPOSED OF SHIPMENT DAMAGED BY DELAY, RULE OF CONSIGNEE'S DUTY TO ACCEPT INAPPLICABLE. Where the carrier, at the shipper's request, accepted the duty of disposing of a shipment of peaches damaged by delay, the rule of the consignee's duty to accept delivery of a damaged shipment subject to his claim for damages was inapplicable.

2. CARRIERS—MEASURE OF DAMAGES TO SHIPMENT INJURED BY DELAY STATED. Where plaintiff shipper had sold to the consignee the peaches shipped at the place of shipment, he was entitled to recover as damages for delay injuring the peaches the difference between the price for which he had sold the peaches, which was their market value at the place of shipment, with freight, loading, and war tax added, and their market value in their damaged condition at destination when he was notified of their nonacceptance by the consignee.

3. CARRIERS—EXTENT OF DAMAGE TO DELAYED SHIPMENT OF PEACHES FOR JURY. In action against carrier for damages by delay in shipment of peaches, the extent of the damages held for the jury.

Appeal from District Court, Second District, Weber County; A. W. Agee, Judge.

Action by John L. Wilson against Walker D. Hines, Director General of Railroads. From judgment for plaintiff, defendant appeals.

Appeal from Second District

AFFIRMED.

*Geo. H. Smith, John V. Lyle,* and *C. B. Diehl,* all of Salt
Lake City, and *C. R. Hollingsworth,* of Ogden, for appellant.

*George Halverson,* of Ogden, for respondent.

WEBER, J.

In his complaint plaintiff alleges that defendant is, and at
all times mentioned was, the Director General of Railroads
and in possession and control of the Oregon Short Line Rail-
road that on August 29, 1919, at Ogden, Utah, plaintiff deliv-
ered to defendant 485 bushels of peaches loaded in one of de-
fendant's cars; that defendant agreed to deliver them within a
reasonable time to S. M. Williams at Idaho Falls, Idaho; that
the car was without ice; that defendant was unable to ice the
car and knew that the peaches would become overripe and
spoil if not delivered within a reasonable time; that before
the peaches were delivered to defendant plaintiff had agreed
to sell them to the said S. M. Williams, the consignee, for
$970 plus freight, war tax, and cost of loading, which amount
Williams had agreed to pay upon delivery at Idaho Falls;
that plaintiff paid for loading $6, and paid the defendant
$4.74 war tax and $158.09 freight charges; that the car-
load of peaches was not delivered within a reasonable time
and was held at Ogden City from 6 o'clock p. m. August
29th till about 9:30 p. m. September 1st; and that by reason
of this delay the peaches became overripe, soft, and unfit for
use and were in such condition on September 2, 1919, when
delivered at Idaho Falls, and because of such condition the
consignee refused to accept them, and plaintiff was damaged
in the sum of $1,113.83.

The evidence amply supports all the material allegations
of the complaint. The jury returned a verdict for plaintiff
for $988.83 and $29.23 interest. From the judgment entered
thereon defendant appeals.

Appellant's first assignment of error is that the court erred
in not granting his motion for nonsuit.

The peaches were loaded at Ogden in good condition and were then allowed to stand in the railroad yard without refrigeration for more than three days. It is not disputed that they arrived at Idaho Falls in a damaged condition. The consignee refused to accept them because of such condition.

Counsel cites authorities to support the well-settled proposition that it is the consignee's duty to accept shipments of perishable goods that are only partially damaged. That rule is of no avail to appellant, as a reference to the undisputed facts will show. After Mr. Williams, the consignee, had refused to accept the damaged peaches, the appellant's agent at Idaho Falls notified the respondent of the consignee's refusal to accept the same. Upon being asked what should be done with the carload of peaches, plaintiff replied: "I can't do anything with it. You people do the best you can." The appellant undertook to sell and did sell the peaches, and realized the sum of $341, which he retained. It is true, as counsel contends, that where goods are damaged, but not wholly destroyed, while under the common carrier's control, the consignee cannot legally refuse to accept them and hold the carrier liable for their whole value; it being the consignee's duty to accept delivery subject to his claim for damages. In this case, however, appellant, at the request of plaintiff, accepted the duty of disposing of the damaged peaches. The consignee's duty is therefore not pertinent in this controversy; the only question being what was the amount of respondent's damages.

Respondent sued for the entire value of the peaches, the amount for which he sold them at Ogden, and which was the market value there, together with the cost of loading and freight and war tax, amounting to $1,138.83. Respondent was entitled to treat the net proceeds from the sale of the damaged peaches as the market value, especially in view of the fact that other evidence indicated that the market value was less than the amount realized and retained by appellant. He was entitled to the difference between $2 a bushel at Ogden, with freight, loading, and war tax added, and their market value in their damaged con-

dition at Idaho Falls at the time respondent was noti-
fied of their nonacceptance by the consignee. As appellant
retained the $341, respondent was of course entitled to that
sum also, or so much thereof as when added to the differ-
ence between the market value at Ogden with freight, war
tax, and loading costs added, and the market value in their
damaged condition would equal the market value of the
peaches when delivered to appellant at Ogden together with
freight, war tax, and cost of loading paid by respondent.
Appellant cites *Barry* v. *L. A. & S. L. Co.*, 56 Utah 69, 189
Pac. 70, in which it is held that the market value at the
place of destination is the criterion by which the amount
of damages for injury to goods is to be determined. That
is the general rule. It does not, however, apply here. The
market value of sound peaches at Idaho Falls was wholly
immaterial because the owner, who brought suit, had sold
for and was promised $2 per bushel at Ogden, which was
also the market value at Ogden, not $2.50, the market value
at Idaho Falls.

The trial court was clearly right in denying the motion for
a nonsuit.

Claiming that only 30 per cent. of the shipment of peaches
was damaged, appellant moved the court to direct a verdict
in favor of plaintiff for 30 per cent. of the invoice value of
the peaches plus the freight and the charges which the
plaintiff had paid and the loading charges of $6, or a total
of $1,138.83, less 70 per cent., thereof, or the sum of $341.65
plus the $341 realized from the sale of the peaches, or a
total of $682.25, without interest and without costs. The
requested instruction would have been a palpable invasion
of the province of the jury. There was testimony to the
effect that 30 per cent. of the peaches was damaged.
It does not follow that the damage to their value        3
would be 30 per cent., because damage to 30 per cent.
of the peaches in baskets, the damaged peaches being mixed
with the sound peaches, would probably decrease the market
value of all of them. In any event, it was a question for the
jury's determination.

Among instructions requested by appellant was one to the effect that in assessing damages the jury must first find that the damage was occasioned by the negligence of the defendant, and not contributed to by any fault or act of negligence on the part of the plaintiff. The record contains not a syllable of evidence of negligence on the part of plaintiff. It would have been error to have given the requested instruction.

An examination of the entire record convinces us that the trial court committed no error that was prejudicial to appellant. If errors were committed, they were in appellant's favor. The jury's verdict for $988.83 and $29.23 interest, a total of $1,018.06, is less than the amount of respondent's damages. By appellant's negligence respondent actually lost $1,138.83, not including interest. If any one has cause for complaint, it is the respondent.

The judgment is affirmed, with costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.